THOMSON-HOUSTON ELECTRIC CO. v. WAGNER ELECTRIC MFG.
CO. et al.

(Circuit Court, S. D. New York. October 9, 1902.)

1. PATENTS—INFRINGEMENT—ELECTRIC MOTORS.

The Thomson patent, No. 430,328, for an alternating current motor, in view of the fact that the broad claims of the original application were rejected by the patent office and erased, and that no machine was ever built thereunder, is entitled to only a narrow construction as against an alleged infringer. Claims 1 and 2, as so construed, *held* not infringed.

In Equity. Suit for infringement of letters patent No. 430,328, for an electric motor, granted to Elihu Thomson June 17, 1890. On final hearing.

J. Edgar Bull and Charles Neave, for complainant.
A. C. Fowler, for defendants.

TOWNSEND, Circuit Judge. Final hearing on bill and answer, raising questions of infringement of the first and second claims of complainant's patent, No. 430,328, granted June 17, 1890, to Elihu Thomson for an alternating current motor. In considering this case the following facts are important: (1) The defendants, by a consent decree in a former suit, had admitted the validity of the patent. (2) This consent decree was signed under the claim that the testimony in the former suit showed that the modified method which defendants purposed to practice would not infringe plaintiff's construction of said patent. (3) All the original claims were rejected on references by the patent office, and were canceled, and the original specification was radically modified. (4) It does not appear that any motor was ever made under the patent in suit. The complainant does not manufacture single-phase motors, except for small fans, and these are not made under the Thomson patent.

The defendants are extensively engaged in the manufacture of single-phase motors. The practical development of such motors was attended with serious difficulties. Certain patents under which defendants manufacture their motors have materially contributed to the success of this type of motors. The single question of infringement depends upon whether the narrow construction contended for by defendants, in view of the history of the application in the patent office and of the prior art, should be adopted.

The patentee says:

"My present invention relates to a method of operating alternating current electric motors in which the rotation is due to the reaction between an alternating current field and an armature, in which currents induced by said field flow in a circuit locally closed on itself."

That is, the patent relates to induction motors, as distinguished from motors in which the current is conveyed to the field and armature by conducting wires.

The patentee then says:

"This class of motors, when running at normal speed, are capable of sustaining their speed of running in synchronism, or nearly synchronism, with the alternations of the feeding wire, but are incapable of starting themselves."

Defendants contend that this statement is incorrect; that some induction motors are capable of self-starting.

The patentee further says:

"My invention consists, broadly, in arranging the motor so that, as a structure, its armature will have different circuit arrangements at the start from those which will exist when it is up to speed or well started in rotation. To accomplish this the motor is started with the armature circuits commuted or changed, so that the armature will receive an initial impulse or impulse of rotation, after which, when the desired speed has been obtained, the connections are so modified, either automatically or at the will of the operator, that the circuit of the motor armature will be locally closed on itself and uncommuted. Briefly, the invention consists in commencing to run the motor with a different circuit arrangement for its armature from that which it will have under its condition of steady normal working or running, such primary condition being one adapted to give a torque, that, being continued for a sufficient time, will bring the motor up to the speed where it may be run with the armature on continually closed circuit."

Defendants claim that the clause, "will receive an initial impulse," taken in connection with the reference to the locally closed circuit after the desired speed is obtained, shows that the initial impulse is to be received by conduction.

The claims in suit are the following:

"(1) The herein-described method of operating an alternating current motor, in which the rotation is produced by the reaction between the field and a locally closed armature circuit carrying currents induced from the field, consisting in organizing or connecting the motor armature circuit so that it may receive an initial impulse of rotation, and, upon the attainment of a predetermined speed, changing or modifying such connections, so as to put the armature coils on locally closed circuit.

"(2) The herein-described method of operating alternating current motors incapable of self-starting, consisting in connecting the armature circuits in a manner different from that which they have during normal work, and in proper way to give the initial torque, and then automatically reorganizing the connections of such armature, so as to put the same on locally closed circuit on the attainment of a predetermined speed."

The respective contentions of the parties are primarily directed to the interpretation of the term "locally closed circuit," as used in the patent. The determination of this question appears to be decisive of the issues involved. The Thomson patent relates to an alternating current inductive motor of the single-phase type; that is, one adapted to receive a single alternating current in a single circuit, and which is incapable of self-starting. Thomson originally purposed to patent broadly any method of starting such motors "under a different set of conditions, or with a different structure, or with a different circuit arrangement from that which it will have under its conditions of steady normal working or running," or by providing commutators only "in carrying out my method at starting." But, upon citation of references, these statements of invention were erased, and the invention claimed was limited to one where, after the initial impulse is received and on the attainment of a predetermined speed, the circuit of the motor armature will be locally closed on itself and uncommuted, or will be put on a "locally closed circuit."

The defendants contend, and have satisfactorily proved, that the term "locally closed circuit," as used by this patentee in prior patents and generally, means a circuit disconnected from the main line. It

refers to a circuit which does not extend from the source of energy, but pertains to the local place, and no other. And defendants claim that the patent in suit is limited to a motor having its coils on a locally closed circuit, after, but not before, the initial impulse of rotation is received. The complainant contends that the term is a relative one, and that when Thomson says in his specification that his invention relates to a method of operating such motors in which currents flow in a circuit locally closed, and says, "This class of motors * * * are incapable of self-starting," he (Thomson) "is referring to a locally closed circuit of such a character that it is not suitable for or capable of causing the motor to start"; that is, one "without the brushes and commutators for exercising directive control over the currents." Complainant further says:

"The defendants use the Thomson locally closed circuited condition when their motor is running. The motor would not start if its circuits were in that condition when the armature was at rest. The defendants, for starting purposes only, use another condition of circuits,—not the Thomson locally closed circuit condition; for, if it were that condition, the motor would not start. The defendants, only after their motor has run up to speed, change their circuit connections and put their circuits in that condition which Thomson meant to define, and in view of his specification did define, as the locally closed circuit condition."

Herein, then, lies the difference between the two devices. In order to start the Thomson motor, you open a switch and the current will be conducted into the armature. If you close that switch, the current stops. Defendants' motor starts by induction, and the motor coils are on locally closed circuits at starting, in the sense that the circuit pertains to the armature only. The term "locally closed circuit," used in the patent in suit, interpreted by its use in two former patents to Thomson, and considered in the light of the file wrapper and contents, must be understood in its general and ordinary sense, as contended by defendants. In this sense defendants' coils are locally closed circuits at starting; complainant's, not until after the running condition is reached.

On the former trial complainant's experts admitted that in the Thomson patent the coils were not on a locally closed circuit at starting, but only on the attainment of the required speed. Thereupon defendants purchased the Anthony, Jackson & Ryan patent, No. 389,-352, one of the patents under which the alleged infringing device is manufactured, and in which the armature coils are at starting and always on locally closed circuits. They have developed this class of motors, as already stated, and are now met by the contention that this patent in suit, a mere paper patent, by a broad interpretation of its terms, may be so extended as to embrace the defendants' construction. The effect of this interpretation would be to give to complainant the benefit of the broad claims, rejected by the patent office, for which the present claims were substituted. Whether such a confessedly simple step as that taken by Thomson involved invention, or whether its confessed impracticability deprives it of all claim to utility, it is not necessary to determine. The defendants are entitled to the benefit of the rule requiring a narrow construction of such a patent. Upon said construction there is no infringement, and the bill may be dismissed.